IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KENNITH PAUL HOWELL, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:24-cv-00468 |
| | § | |
| HARRIS COUNTY, TEXAS, *et al* | § | |
| | § | |
| *Defendants.* | § | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

COMES NOW, Kennith Paul Howell, (hereinafter referred to as "plaintiff") files his First Amended Complaint complaining of Harris County, Texas, and Henry Martinez (hereinafter referred to as "defendants"), and in support thereof would respectfully show unto the Court as follows:

## TABLE OF CONTENTS

I.   SUMMARY OF THE COMPLAINT ................................................................. 4

II.  PARTIES ......................................................................................................... 7

III. JURISDICTION AND VENUE ....................................................................... 8

IV.  FACTS AND ALLEGATIONS ........................................................................ 8

V.   CAUSES OF ACTION .................................................................................. 30

     A. COUNT I. *MONELL* CLAIM; VIOLATION OF THE FOURTEENTH
        AMENDMENT; PURSUANT TO 42 U.S.C. §1983 CONDITIONS OF
        CONFINEMENT: ...................................................................................... 30

   **B. COUNT II. *MONELL* CLAIM; PURSUANT TO 42 U.S.C. § 1983 4th and 14th AMENDMENT VIOLATIONS – HARRIS COUNTY FAILURE TO TRAIN AND/OR SUPERVISE** ..................................... 37

   **C. COUNT III. *MONELL* CLAIM; PURSUANT TO 42 U.S.C. § 1983 4th and 14th AMENDMENT VIOLATIONS – HARRIS COUNTY UNLAWFUL POLICY BY ACTS OF OFFICIAL POLICY MAKERS** 39

   **D. COUNTY IV. *MONELL* CLAIM: EPISODIC ACT** .............................. 41

**VI.   STATUTE OF LIMITATIONS VIOLATES TEXAS AND UNITED STATES CONSTITUTION** ...................................................... 42

**VII.   DAMAGES** ...................................................................... 47

**VIII.   JURY DEMAND** .............................................................. 49

**IX.   PRAYER** .......................................................................... 49

## TABLE OF AUTHORITIES

**Cases**

*Bartee v. Harris Cty,*
   2018 U.S Dist LEXIS 232945 *9 (S.D.Tex.2018) ....................................... 9
au
*Ettinoffe v. Sheikh,*
   No. 4:21-CV-02646, 2022 U.S. Dist. Lexis 182151,
   at *5 (S.D. Tex. Oct. 4, 2022) (Ellison, J.) ................................................ 21

*Feliz v. El Paso Cnty, ,,*
   441 F. Supp. 3d 488, 499 (W.D.Tex.2020) ............................................. 5

*Helton v. Clements,*
   832 F.2d 332 (5th Cir. 1987) ..................................................................... 43

*Hernandez v. Lubbock Police Dep't,* No. 5:18-CV-254-BQ,
   2019 U.S. Dist. LEXIS 45193, at *6 (N.D. Tex. Feb. 25, 2019) ............... 43

*Iberiabank Corp v. Ill. Union Ins. Co.*,
   953 F.3d 339 (5th Cir. 2020)..................................................................................5

*Jerome Bartee, Jr. v. Harris County*, No. 4:16-cv-02944, Dkt. No. 172.
   (S.D. Tex. Oct. 28, 2021)....................................................................................24

*Sanchez v Young*
   866 F 3d. 274, 279 (Fth. Cir. 2017)....................................................................28

*Salcido v Harris County*,
   U.S. Dist Lexis 169034 *127 (S.D.2018)........................................................28,40

*Wagner, Et Al, v. Harris Cnty*,  No. 4:23-cv-028686,
   (S.D. Tex. August 7, 2023)...........................................................................24, 32

*Paul v. Sabban*,
   No. 22-51113, 2023 U.S. App. LEXIS 18820, at *3 (5th Cir. July 24, 2023)...........42

*Piotrowski v. City of Houston*,
   237 F. 3d 567 (5th Cir. 2001).......................................................................41,42

*Rotella v. Pederson*,
   144 F.3d 892 (5th Cir. 1998)..............................................................................43

**Statutes**
**42 U.S.C** §1983.................................................................................5, 28, 32,35,37

**28 U.S.C** §1331...................................................................................................5

**28 U.S.C** §1343...................................................................................................5

**42 U.S.C** §1988...................................................................................................5

**42 U.S.C** §12131.................................................................................................5

**29 U.S.C** §794....................................................................................................5

Tex Civ. Prac. & Rem. Code Ann. §16.003(a)............................................................41

Tex Civ. Prac. & Rem. Code Ann. §74.251....................................................................40

Tex Civ. State. Art. §45900i.........................................................................................40

## I.

## SUMMARY OF THE COMPLAINT

1.      The Harris County Jail is wrought with mean and women whose lives are compromised by the actions and the deliberate indifference of the detention officers and staff who are tasked with the duty to protect them. Although, this is not a case about a death, the unconstitutional actions, including beating inmates have resulted in more people being killed, in the past several years, in the Harris County Jail than have been executed on death row in all of Texas.

2.      The Harris County Sheriff as the policymaker for the Jail has created a pervasive pattern and culture of death which has claimed over fifty lives of pre-trial detainees since 2021. This pattern does not end with simply those who lost their lives but extends to each of those individuals who have suffered needless and numerous beatings, lack of medical attention, and whose cries for help were silenced by their captors.

3.      For the past seven years, Harris County and its policy-maker Sheriff Ed Gonzalez have been objectively and subjectively aware of the deplorable conditions that face the pretrial detainees trusted to their care. During this time frame, Harris County has become a place pf punishment for many who walk in its doors especially those who suffer from mental and physical disabilities. Harris County and Sheriff

Gonzalez cannot claim ignorance as they have been deliberately indifferent and encouraged the ongoing policies, customs, and practices that they know cause constitutional, statutory, and common law violations to individuals, including Kennith Howell, while in the Harris County Jail and its associated annexes. Their indifference is compounded by the fact that despite their awareness of these ongoing violations they have failed to implement corrective or remedial customs or policies as these same injuries continue at an alarming rate.

4.      Harris County Jail's questionable history goes back almost a quarter of century when in the late 1990's and early 2000's, the community called for change in the jail as many detainees were suffering the same constitutional violations that face present-day detainees. Due to this public outcry, the Department of Justice stepped in and conducted an extensive investigation which resulted in numerous findings of unconstitutional practices and conditions within the Jail. Their 2009 Report expressly found that the number of detainee's deaths was "alarming" and that the Jail's use of force exposed detainees to serious injury risks.

5.      This seriousness of the DOJ report should have brough drastic change within the Jail; less than seven years later, Sheriff Ron Hickman admitted that the Jail had a culture of violence and culture of using excessive force which led to detainee injuries. When Sheriff Gonzalez ran against Sheriff Hickman in 2016, Sheriff Gonzalez attacked Sheriff Hickman's handling of the Jail and stated in a debate that "We've got to end this culture that quickly leads to physical altercation."

6.     Both Sheriff's expressly understood what was going on in the Jail, yet nothing ultimately changed with the Jail. Most importantly, for this case, detainees were still subjected to beatings by officers.

7.     Since Sheriff Gonzalez's statement in 2016, the culture and medical care within the jail has only grown worse. Statistics show that for the past three years, the Harris County Jail has had more assaults within the jail than all over 251 other Texas County Jails combined. Additionally, in 2022, the Harris County Jail accounted for 51% of all officers' uses of force in all of Texas. In contract, the Harris County Jail accounted for 23% of all officer uses of force in all of Texas in 2018.

8.     The Texas Commission on Jail Standards has issued almost a dozen reports and notices of non-compliance since Sheriff Gonzalez was elected that found that the Jail violated numerous minimum jail standards. Several of these even related to specific deaths within the Jail. Four of these reports came between September 2022 and April 2023. This is further evidence that the Jail's conditions continue to get worse.

9.     In addition to the Texas Commission on Jail Standards, the ever-growing list of prior incidents, complaints, and other lawsuits by detainees in the past five years further exemplifies the egregious pattern and practice of the Jail's policies and procedures which cause constitutional violations. As will be shown further below, even with the limited public information available to Plaintiffs, there are at least 41 other individuals who suffered injuries or death because of Harris County's policies and procedures.

10. Through Harris County's deplorable policies, procedures, and customs, Kennith Howell has suffered significant injuries caused by those customs.

## II.

## PARTIES

11. Plaintiff Kennith Paul Howell was a resident of Galveston County and the State of Texas at the time of the incident made the basis of this suit. Defendant Harris County is a government entity in the State of Texas. Defendant Harris County is the government entity responsible for the Harris County Sheriff's Office which is in turn responsible for the Harris County Jail where Plaintiff suffered his severe injuries. At all relevant times hereto, Defendant Harris County was a "person" within the meaning of 42 U.S.C § 1983. Harris is located in the Southern District of Texas. Harris County may be served with this amended complaint by and through its attorney of record James C. Butt and Frank J. Ford, Assistant County Attorneys.

12. 12. Defendant Henry Martinez is an individual who may be served with this amended complaint by and through his attorney of record James C. Butt and Frank J. Ford, Assistant County Attorneys. Martinez was employed by the Harris County Sheriff's Office as a detention officer and acted under color of state law at all relevant times.

13. Plaintiff respectfully request that citations be issued against the Defendants.

## III.

### JURISDICTION AND VENUE

14.    This Court has Jurisdiction over this action pursuant to 28 U.S.C. §1331 and §1343, because Plaintiffs are suing for relief under 42 U.S.C. §1983, and 42 U.S.C. §1988, because Plaintiffs are suing for relief under 42 U.S.C. § 12131 *et. seq.*; and 29 U.S.C. § 794.

15.    Venue is proper in the Southern District of Texas pursuant to 28 U.S.C. §1391 because Defendant is located in the Southern District of Texas, and all or a substantial part of the causes of action accrued in the Southern District of Texas.

## IV.

### FACTS AND ALLEGATIONS

16.    Plaintiff incorporates the foregoing paragraph's as if set forth fully herein.

17.    Plaintiff's claim arises out of the ongoing policies, practices, and procedures of Harris County that led to the constitutional deprivation of Kennith Howell's rights.

### A.    PLAINTIFF WAS DEPRIVED OF HIS CONSTITUTIONAL RIGHTS BY HARRIS COUNTY JAIL.

18.    Plaintiff suffered injuries caused by Harris County's pervasive acts and omissions which were sufficiently extended and pervasive to constitute the policies and conditions of Harris County.

19.    On or about January 14, 2022, Mr. Howell was in the Harris County Jail located at 1201 Baker Street Houston, Harris County, Texas 77002. On January 14, 2022, Mr. Howell was in his cell and had been asking for a common necessity that he

needed, specifically toilet paper since 8:00 a.m. Three hours later, at 12:00 p.m., Detention Office Henry Martinez, working for the Harris County Sheriff's Officer had Detention Officer Marcos Tise open up Kennith Howell's cell. Upon opening the cell Detention Officer Henry Martinez told Kennith Howell, "this is my house" and then proceeded to punch him in the face, neck and about his body. As a result of Detention Officers inflicting serious injury to Kennith Howell, he was escorted by emergency medical services and another officer to Ben Taub Hospital.

20.     As a result of being punched in the face, neck and body multiple times Mr. Howell suffered a broken jaw and two shattered teeth. Kennith Howell's jaw required a plate.   As a result of his injuries, Plaintiff Kennith Howell spent a significant amount of time in Ben Taub hospital and the weeks in the jail clinic where he existed on a liquid diet.

21.     Detention Officer Henry Martinez was acting under the common policies, practices, and procedures of the Harris County Jail in taking matters into his own hand. No sergeant or other commanding officer ever came in to interfere or prevent this assault.

22.     Due to the actions, policies, practices, and customs of Harris County, Kennith Howell suffered a broken jaw, and shattered teeth.

23.     Harris County Jail's culture of violence and prevalent policies, practices, and customs of failing to observe and monitor detainees, provide timely and adequate medical care, institutionalized excessive force by jail employees on detainees, and

systematic understaffing and overcrowding of the Jail were the direct cause and moving force of Kennith Howell's injuries.

24.     Sheriff Gonzalez was the policy maker for Harris County with respect to the Jail when Mr. Howell was needlessly injured due to the Jail's unconstitutional policies, customs, and practices.

> **B.     HARRIS COUNTY POLICIES, CUSTOMS, AND PRACTICES WERE THE MOVING FORCE AND PROXIMATE CAUSE OF PLAINTIFF'S CLAIMS AND INJURIES.**

25.     For moving force purposes, a plaintiff need only show that the municipal action or inaction was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights. *Bartee v. Harris Cty.*, 2018 U.S. Dist. LEXIS 232945 *9 (S.D. Tex. 2018). A plaintiff meets the culpability showing if the municipality adopted a policy with deliberate indifference to the "known or obvious consequences" that a constitutional violation would result. *Id*. *Bartee v. Harris Cty.*, 2018 U.S. Dist. LEXIS 232945 *9 (S.D. Tex. 2018).

26.     Due to the actions, policies, practices, and customs of Harris County, Plaintiff suffered significant injuries. Each of the following policies, practices, and customs were the direct cause and moving force of Plaintiff's injuries.

26.     Harris County Jail's culture of violence and prevalent policies, practices, and customs encouraging officers to act in a "culture that quickly leads to physical altercation," to use more force than necessary to subdue an inmate, to use improper force techniques that are more likely than not to lead to serious bodily injury, that

encourages officers to utilize excessive force when the inmate fails to comply with verbal orders and/or physical forces without repercussion, that encourage officers to not adequately document uses of force, that encourages supervisors to not report or discipline uses of force, that encourage officers to use force on subdued and restrained detainees as a punishment and retaliation tactic, to use force as a means of sending a message to detainees despite no justifiable reason for the use of force, to fail to de-escalate or even attempt to use de-escalation techniques, and to forego reasonable non-violent techniques was a moving force in the injuries of Kennith Howell.

27.     Harris County has encouraged this policy by repeatedly determining that the actions of jailers/ detention officers which constitute an unnecessary use of force were justified and within the guidelines of their policies, procedures, and the law.

28.     Failure to properly observe and monitor Plaintiff led to inadequate supervision of officers permitting officer attacks, and led to inadequate responses to detainee needs which was a moving force and ultimately caused the injuries of Kennith Howell.

29.     Harris County's rampant practice and policies of understaffing and overcrowding the jail encouraged violence by officers against detainees, caused additional psychological and physical stresses on officers which leads to violent outbursts directed at detainee's, prevented a correct proportion of guards to carry out the necessary functions of the jail safely which encourages officers to use the quickest methods to get results out of detainees including excessive violence, makes the employees "overworked, moral is poor, bad decisions happen when [understaffing is]

occurring," impedes the jailer's ability and/or willingness to observe and monitor detainees, impedes the jailer's ability and/or willingness to deter detainee on detainee or officer on detainee violence, reduces the ability of officers to escort detainees safely, and results in insufficient officers to carry out even minute functions of the jail safely, which resulted in the injuries of Kennith Howell.

30.     It was highly predictable that Harris County employees would follow these ongoing policies and practices. The known and obvious consequences of Harris County's policies and practices identified above is that detainees would suffer significant injuries and death. The DOJ, TCJS, and even the Sheriff as explained above have all provided notice of these policies and the likely consequences of those policies causing constitutional violations.

31.     Harris County acted with deliberate, callous, conscious, and unreasonable indifference to Plaintiff's constitutional rights by being aware of the known and obvious consequences of their policies and practices but continuing to authorize, tolerate, and ratify the implementation of the custom and practice resulting in the injuries of Kennith Howell.

32.     Each of the policies taken above and in context of each Plaintiffs' injuries were promulgated, enforced, ratified, and created by Harris County's policymakers including Sheriff Gonzalez. Harris County has been aware of these policies, practices, and customs since at least 2009 as shown below.

**C. HARRIS COUNTY'S LONGSTANDING CULTURE OF DELIBERATE INDIFFERENCE TO THE LIVES OF DETAINEES EXEMPLIFIES THE POLICIES, CUSTOMS, AND PRACTICES THAT LED TO THE VIOLAITON OF PLAINTIFF'S CONSTITUTIONAL RIGHTS.**

33.    Although, there are few records available to Plaintiff regarding Harris County's rampant constitutional violations, they are more than sufficient to draw the conclusion that Defendant has ongoing policies, practices, procedures, and customs are the moving force behind the violation of each Plaintiff's constitutional rights leading to Kennith Howell's injuries.

34.    The limited records available to Plaintiff include an investigation by the Department of Justice, numerous investigations and non-compliance reports by the Texas Commission on Jail Standards, multiple admissions by the Harris County Sheriffs of the "culture" within the Jail, statistics gathered and reported by the Harris County Sheriff showing the violent nature of the Jail, and numerous incidents involving similar facts and injuries suffered by other Harris County Jail detainees over the years.

**i.    Harris County Was Made Aware of Its Systematic Constitutional Failures by the Department of Justice in 2009.**

35.    The Harris County Jail's conditions were so deplorable that the Department of Justice was forced to investigate the Jail for constitutional violations beginning in March, 2008. 1 DOJ Report at 1.

---

1 Plaintiff asks the Court to take judicial notice of the Department of Justice report from June 4, 2009. ("DOJ Report"). Plaintiff cites to the page numbers of the report as it appears to the public.

36.     What the officials found were "systemic deficiencies" throughout the Jail. *Id.*

To summarize their findings, the DOJ found:

> [W]e also conclude that certain conditions at the Jail violate the constitutional rights of detainees. Indeed, the number of inmate deaths related to inadequate medical care, described below, is alarming. As detailed below, we find that the Jail fails to provide detainees with adequate: (1) medical care; (2) mental health care; (3) protection from serious physical harm; and (4) protection from life safety hazards.

*Id. at* 1.

37.     Notably, the Jail had over 9,400 detainees at the time the DOJ inspected. *Id*

### *Unconstitutional Policies Concerning Detainee and Officer Violence*

38.     One main area that the DOJ found as unconstitutional was "significant and often glaring operational deficiencies" in security matters including lacking: "(1) a minimally adequate system for deterring excessive use of force, and (2) an adequate plan for managing a large and sometimes violent detainee population." *Id.*

39.     In addressing this area, tellingly, the DOJ started their analysis with: "We have serious concerns about the use of force at the Jail." *Id.* at 15.

40.     "Indeed, we found significant number of incidents where staff used inappropriate force techniques, often without subsequent documented investigation or correction by supervisors." *Id.* The staff would fail to properly investigate the use of force when used with inaccurate documentation and relying exclusively on officer statements. *Id.* "Jail data regarding use of force levels cannot be considered reliable." Id. "We believe that the incidents noted during our review may only reflect part of what is really occurring within the facility." I*d.*

41.    "As a result of systemic deficiencies. . . the Jail exposes detainees to harm or risk of harm from excessive use of force." *Id.* The DOJ provided numerous examples of the use of force resulting in life altering injuries or death. *Id.* at 15–17

42.    In relation to the Jail's unconstitutional history of violence, the DOJ discussed the impact of overcrowding has on the conditions of the Jail which are the exact same issues that have faced the Jail from 2009 till today. *Id.* at 16–18.

> Jail crowding affects multiple Jail systems. For instance, it impedes detainee access to medical care, indirectly affects detainee hygiene, and reduces the staff's ability to supervise detainees in a safe manner. How the Jail handles inmate supervision and violence illustrates some of the complexities associated with overcrowding.

*Id.* at 17.

43.    Each of these constitutional violations noted by the DOJ should have caused immediate and permanent change within the Jail itself. The Sheriff as the policymaker for the Jail was on actual notice of these issues and precludes any excuse for allowing these constitutional violations to occur. The trend of deaths and injuries in the Jail should have sloped downward. Instead, it has spiraled upward as each of the deficiencies noted by the DOJ have only worsened.

44.    The Sheriff has shown that without significant oversight the Jail will continue its policies, practices, and customs that violate the detainee's constitutional rights. The lack of permanent change following the DOJ Report is illustrated perfectly by the violations of the constitutional rights of Plaintiffs in this case as the deficiencies noted are still the moving force in the violation of Plaintiff's rights.

ii. **As of 2016, The Harris County Sheriff as the Policymaker for Harris County Jail Was Well Aware of the Unconstitutional "Culture" that is Prevalent in the Harris County Jail that Continues to Get Worse.**

45. In 2016, When Sheriff Gonzalez was running against the former Sheriff Ron Hickman, both Sheriff's acknowledged the rampant issues inside the jail. Sheriff Gonzalez attacked the state of affairs in the Harris County Jail and attacked the policies of Sheriff Hickman. [2]

46. Sheriff Gonzalez's answer reveals his actual knowledge concerning the ongoing constitutional issues that were depriving the detainees of their constitutional rights which were present in the DOJ Report, and which are present in this action.

> "Well, I think we need to change the culture. I think here recently there was another civil rights lawsuit of an inmate that was beaten so severely it required reconstructive facial surgery. So the culture needs to change. Uh and so, we need to also that we are leveraging technology, there's technology available that could help reduce suicides uh for example by measuring when there is a decreased pulse inside the jail cell. We need to be pursuing that. We also need to make sure that we're better training our deputies and detention officers as well as the triage when they first come in. . . employees are being forced to work mandatory overtime, they're overworked, moral is poor, bad decisions happen when that's occurring so we need to make sure that we change. And we also need to improve training as well. Make sure that we are creating opportunities to learn better de-escalation techniques so things don't get out of control, but it starts with leadership. We've got to end this culture that quickly leads to physical altercation, and we also need to better address mental illness in the community."

Sheriff Debate (emphasis added).

47. Continuing with their questions about the Harris County Jail, the moderators asked Sheriff Gonzalez what he was going to do with the "overcrowding problem" in

---

2 A video copy of the debate can be found at https://abc13.com/debate-harris-county-sheriffs-office-sheriff-law-enforcement/1552812/

Harris County Jail. To summarize his position, he stated, "I'm gonna fight to make sure that we lower our jail overpopulation.

48.     Sheriff Gonzalez recognized that the Jail's overpopulation was a problem and that "this is not a new problem, we've had overpopulation before. . ." "[I]f the jail overcrowding is such an issue as we've talked about quite a bit here tonight, then we need to be changing that system. If not, we're going to continue to see a lot of the same problems." Yet, when looking at the Jail population statistics, the Jail is at a higher population now, and for the majority of the tenure of Sheriff Gonzalez than it was during Sheriff Hickman's office.

49.     Sheriff Gonzalez recognized the staffing issues within the Jail by pointing out the requirements for staff to work overtime and by criticizing Sheriff Hickman by claiming that there were too many people in laundry and the kitchen and other areas when they should only be focusing on the positions that must meet the 1:48 ratio. This practice of pulling unqualified staff from other positions to meet the 1:48 ratio is the exact sort of policy that the Texas Commission on Jail Standards found was non-compliant in its November 2021 Report and Notice of Noncompliance.

50.      In his closing argument, Sheriff Gonzalez reiterated that he had the skills to "clean up our county jail. . . too many inmates are losing their lives or are less safe."

51.     In a recent interview, Sheriff Gonzalez admitted that the overcrowding in the Jail has caused significant problems and that they are in need of 700 additional staff

members. 3 Sheriff Gonzalez stated that even though they try to meet the state staffing ratio standard, that standard is "not always sufficient. . . . because minimum isn't always going to be what we really need. . . ."

52.    Harris County along with every other county jail in Texas are required to provide a "Serious Incident Report" to the Texas Commission on Jail Standards every month on the fifth day of the month. The only reports available start in 2018.

53.    These statistics tell of a widespread practice of excessive force, lack of medical care, and lack of observation and supervision that has only grown worse since the 2009 DOJ Report.

54.    Texas has 252 county jails. Harris County is the highest populated county jail, but even with its history of overpopulation, it has only accounted for 14% of the jail population across the entire state at its highest.

55.    Each report contains a breakdown of what the law defines as a Serious Incident. This includes suicides, attempted suicides, death in custody, escapes, assaults, sexual assaults, serious bodily injuries, and use of force resulting in a bodily injury.

56.    Assaults encompass many different assaults including detainee on detainee and officer on detainee. Use of force encompasses when an officer uses force on a detainee; however, this is not a serious incident if the use of force does not result in a bodily injury.

---

3 https://www.houstonpublicmedia.org/articles/shows/houston-matters/2023/01/19/441370/sheriff-gonzalez-on-jail-deaths-jan-19-2023/

57.     From 2018 until today, the number of assaults occurring in Harris County continues to grow. The easiest way of seeing this growth is a breakdown of the number of assaults that occur in Harris County compared to all other Texas counties combined. In 2018 and 2019, Harris County accounted for 44% of all assaults that occurred in the state. In 2020, Harris County accounted for 55% of all assaults in the state. In 2021, Harris County accounted for 56% of all assaults in the state. In 2022 and for the first six months of 2023, Harris County accounted for 52% of all assaults in the state. Thus, for the past four years, Harris County Jail has had hundreds to thousands of more assaults than the 251 other Texas county jails combined. 4

58.     The Use of Force statistics paint even more detail into the Harris County Sheriff's ratified "culture that quickly leads to physical altercation" due to their insufficient training, understaffed and overpopulated Jail, and deliberate indifference to the human lives placed within their care.

59.     The use of force statistics shows a pattern, practice, and culture of excessive force by officers against detainees in the Harris County Jail. In 2018 when the statistics first started to be reported, Harris County Jail accounted for 23% of all Use of Force resulting in bodily injury in Texas. In 2019, that number grew to 27%. In 2020, Harris County Jail accounted for 30% of all use of force. In 2021, the use of force number grew to 34%. In 2022, Harris County Jail's proportion of the use of force

_____

4  The Statistics for 2023 run through June 2023. All Serious Incident Reports are a matter of public record. Tex. Gov't Code Ann § 511.020(d)

jumped to 51% of all use of force in Texas. In the first six months of 2023, Harris County is on pace to account for 52% of all use of force in Texas.

60.    In Harris County in the past six years, the total number of use of force incidents continues to eclipse astronomical records. In 2018, 2019, and 2020, Harris County had 628 use of force incidents combined. In 2022 alone, Harris County had 653 use of force incidents. In 2023, Harris County is on pace to have over 722 use of force incidents.

61.    The monthly totals continue to tell the shocking difference between Harris County and other counties in Texas that have patterns of unconstitutional conditions. In July 2021, Harris County had 42 use of force incidents. Bexar, Dallas, Travis, and Tarrant Counties only had 4 use of force incidents combined. In July 2022, Harris County had 54 use of force incidents. For that same month, Bexar, Dallas, Travis, and Tarrant Counties only had 8 use of force incidents. In January 2023, which was one of the most violent months in Harris County history, Harris County had 87 use of force incidents. Bexar, Dallas, Travis, and Tarrant Counties only had 4 use of force incidents combined.

62.    Kennith Howell was assaulted by Detention Officer Henry Martinez and suffered a broken jaw, and shattered teeth as a result of Harris County's policy, practice and custom of using excessive and unnecessary force against detainees.

63.    Each of these statistics show the ongoing and growing pattern, practice, and culture of excessive force in the Harris County Jail which includes officer on detainee force and the failure to interfere, discourage, or stop detainee on detainee violence

which has caused many of the deaths and injuries in the Jail. The Jail's culture of inadequate medical care compounds these issues by being inundated with injuries on a daily basis and not providing sufficient care for those in need. Further, exasperating the situation is the fact that the Jail promotes a culture of overcrowding and understaffing vital positions which then leads to inadequate observation and monitoring of the detainees.

64.    These statistics further show that the Harris County Sheriff as the policymaker for the Jail is actually aware of the widespread practices within the Jail that are the moving force in constitutional violations because the Sheriff is the officer charged with gathering and submitting the Serious Incident Reports each month. The Harris County Sheriff would be hard pressed to say that the Jail does not have a culture of excessive force when it has twenty-five times more assaults than 250 other Texas counties on average per month.

### iii.    The Texas Commission on Jail Standards Identifies Numerous Constitutional Violations in Relation to Harris County's Policies, Customs, and De Facto Policies. 5

65.    The widespread practices evidencing Harris County's unconstitutional policies, customs, and de facto policies have been the subject of numerous investigations, reports, and noncompliance notices from the Texas Commission on Jail Standards ("TCJS"). The TCJS inspects county jails to determine if they meet

---

5 Plaintiff incorporates the Texas Commission on Jail Standards' Reports cited within this Complaint. Plaintiff ask the Court to take Judicial Notice of the TCJS Reports

certain minimum standards. The TCJS may conduct reviews of use of force by officer's on detainee's, along with a number of other "critical incident issue" areas.

66.     The TCJS has found Harris County consistently non-compliant with minimum standards in their practices, policies, and customs which are some of the same policies and customs which were the moving force in the deprivation of Plaintiff's constitutional rights.

67.     Although, Harris County has been found by the TCJS to be non-compliant in providing medical services to detainee's, failing to properly observe and monitor detainee's, provide proper health care to detainee's with mental illness, staff failing to routinely complete the initial classification and assessment and re-assessment properly, not properly filling out mental health screen forms, our attention for purposes of this case are the supported policies of Harris County, including the continued policy of falsely filling out use of force documentation, and the use of excessive force by officers on inmates.  Detention Officer Henry Martinez , acting in conformity with Harris County's unconstitutional policies, when he filled out his report attached [Doc. #9-1] alleging that he was so outrageously powerful that with one punch, with his barehand, in close proximity shattered a grown man's jaw in multiple locations and shattered his front teeth into pieces.

###     a.     Texas Commission on Jail Standards April 6, 2021, Report

68.     On April 6, 2021, TCJS issued its report and notice of noncompliance to the Harris County Jail for its investigation into the in-custody death of Jaquaree Simmons.

69. As explained in depth below, Mr. Simmons was beat to death by multiple detention officers within the Harris County Jail and then was left inside of his cell alone without any observation.

70. TCJS found that the jail was still in non-compliance with minimum observation requirements as identified in the December 9, 2020, report.

71. **At the time of TCJS's report, it had not been revealed that the use of force documentation leading to Mr. Simmons' death was falsely filled out.**

72. Although all the reports by TCJS are not analogous to the beating performed by Detention Officer Henry Martinez against Kennith Howell, they however show a pattern of policies, customs, and culture that when taken as a whole are what lead to the excessive use of force against Kennith Howell.

### D. PRIOR AND CURRENT INMATE DEATHS AND INJURIES, INCLUDING KENNITH HOWELL'S DUE TO HARRIS COUNTY'S UNCONSTITUTIONAL POLICIES, CUSTOMS, AND DE FACTO POLICIES

73. In addition to the DOJ Report, the admissions by Harris County Sheriffs, the Serious Incident Reports, and the TCJS reports, numerous detainees suffered similar violations of their constitutional rights as Kennith Howell which further corroborates Harris County's pattern, practices, and customs even though specific prior examples are not required to meet the elements for Plaintiffs' claims. *Feliz v. El Paso Cnty.,* 441 F. Supp. 3d 488, 499 (W.D. Tex. 2020).

### i. Kennith Howell

74. Kennith Howell was an inmate at the Harris County Jail on January 14, 2022.

75.     On or about January 14 -22, 2022, Kennith Howell was in the Harris County Jail located at 1201 Baker Street Houston, Harris County, Texas 77002. According to attached report [Doc. #9-1] which is the only documents regarding this incident because no discovery has been performed due to the posture of the case at this time.

76.     Mr. Howell was in his cell and had been asking for a common necessity that he needed, specifically toilet paper since 8:00 a.m. Three hours later, at 12:00 p.m., Detention Office Henry Martinez, working for the Harris County Sheriff's Officer had Detention Officer Marcos Tise open up Mr. Howell's cell.

77.     Detention Officer Martinez alleges that Kennith Howell was complaining about how long it had taken to receive the toilet paper.

78.     Detention Officer Henry Martinez alleges that at this time Kennith Howell lunged towards him and he struck, with his fist, Kennith Howell one time.

79.     According to Kennith Howell, Detention Officer Martinez was upset that he had continued to ask for restroom paper for three hours.

80.     According to Mr. Kennith Howell, Upon opening the cell Detention Officer Henry Martinez told Mr. Howell, "this is my house" and then proceeded to punch Mr. Howell in the face, neck and about his body. As a result of Detention Officers inflicting serious injury to Kennith Howell, he was escorted by emergency medical services and another officer to Ben Taub Hospital.

81.     According to attached report [Doc.#9-1], Kennith Howell's jaw shattered and his teeth were shattered with one single punch. .

82.     As a result of being punched in the face, neck and body multiple times Kennith Howell suffered a broken jaw and two shattered teeth. Kennith Howell's jaw required a plate.  As a result of his injuries, Kennith Howell spent a significant amount of time in the Ben Taub hospital, in and out of consciousness and in pain. According to Kennith Howell, after his jaw was broken and teeth shattered, his jaw was wired and he existed on a liquid diet for close to a month.

83.     According to defense exhibit a. Following the beating, Mr. Kennith Howell was charged with violating the Harris County Sheriff's Office Inmate Handbook Code (1317) "UNATHORIZED CONTACT WITH ANY STAFF MEMBER".

84.     Harris County Jail's culture of violence and prevalent policies, practices, and customs encouraging officers to act in a "culture that quickly leads to physical altercation," to use more force than necessary to subdue an inmate, to use improper force techniques that are more likely than not to lead to serious bodily injury, that encourages an unnecessarily large number of officers to subdue inmates without any attempt to coordinate their respective efforts without repercussion, that encourages officers to utilize excessive force when the inmate fails to comply with verbal orders and/or physical forces without repercussion, that encourages officers to create scenarios that victims cannot comply with and unnecessarily harm them without repercussion, that encourage officers to not adequately document uses of force, that encourages supervisors to not report or discipline uses of force, that encourage officers to use force on subdued and restrained detainees as a punishment and retaliation tactic, to use force as a means of sending a message to detainees despite no justifiable

reason for the use of force, to fail to de-escalate or even attempt to use de-escalation techniques, and to forego reasonable non-violent techniques was a moving force in Kennith Howell's injuries.

85. Harris County has encouraged this policy by repeatedly determining that the actions of jailers which constitute an unnecessary use of force (closed fist strikes to the face) were justified and within the guidelines of their policies, procedures, and the law.

86. Harris County's rampant practice and policies of understaffing and overcrowding the jail encouraged violence by officers against detainees, causes additional psychological and physical stresses on officers which leads to violent outbursts directed at detainee's, prevents a correct proportion of guards to carry out the necessary functions of the jail safely which encourages officers to use the quickest methods to get results out of detainees including excessive violence, and makes the employees "overworked, moral is poor, bad decisions happen when [understaffing is] occurring" which was a moving force in causing Mr. Kennith Howell's injuries.

87. he Harris County Sherriff policymaker for Harris County with respect to the jail when Mr. Kennith Howell was injured due to the jail's unconstitutional policies, customs, and practices.

88. The above allegations by Mr. Kennith Howell are similar to those allegation in *Jerome Bartee, Jr. v. Harris County,* 4:16 – cv – 02944, Dkt. No. 172. (S.D. Tex. filed Octo. 28, 2021).

### ii. Harris County's History of Constitutional Violations Is Further Exemplified Through Testimony of Prior Employees, Witnesses, and Detainees.

89.     Plaintiff Incorporates Plaintiff's Exhibit A, attached hereto, as if set out in full herein. *Wagner, Et Al v. Harris Cnty.,* 4:23-cv-028686 (S.D. Tex. 2023) Plaintiff references and incorporates Plaintiff's Exhibit A, Pg.150-154, the testimony of Treyvan Crowder, Harris County Detention Officer J. Valdiviez, Harris County Sergeant Jane Doe, Harris County Jail Employees, and Shannon Herklotz Resignation Letter.

90.     The above referenced testimony and letter are more examples of Harris County's rampant policies, practices, and procedures of understaffing, underfunding, overcrowding the jail which led to increased violence against, and excessive use of force against inmates.

91.     Sherriff Gonzalez, as the Harris County Sheriff, was the policymaker for Harris County with respect to the jail when Ms. Doe suffered her injuries due to the jail's unconstitutional policies, customs, and practices.

### E. CURRENTLY KNOWN POLICIES, PRACTICES, CUSTOMS, AND/OR DE FACTO POLICIES ADOPTED AND PROMULGATED BY THE HARRIS COUNTY SHERIFF WITH DELIBERATE INDIFFERRENCE WHICH CAUSED THE VIOLATION OF PLAINTIFF'S CONSTITUTIONAL RIGHTS.

92.     The repeated, extensive, and pervasive acts and omissions of constitutional violations in the Harris County Jail as shown above gives rise to multiple official policies, practices, culture, and customs which are the basis for many of the causes of action stated below.

93.     The County's policies, practices, culture, and customs are more fully developed throughout this Complaint, but for the sake of clarity, these policies include but are not limited to the following:

a.      **Failure to Observe and Monitor:** Routine failure to properly observe and monitor detainees through face-to-face checks, video monitoring, and in identifying and monitoring blind spots within the jail and subsequent inaccurate reporting and documentation of those observations.

b.      **Institutionalized Excessive Force by Jail Employees on Detainees:** Patterns, practices, policies, and culture of encouraging and failing to deter the use of force by jail employees;

i.      By creating a "culture that quickly leads to physical altercation";

ii.     Insufficient training and enforcement of non-physical de-escalation techniques;

iii.    Policy of officers and sergeants utilizing excessive force and inappropriate force techniques that cause unnecessary harm to detainees to teach detainees lesson from requesting medical care, including common needed items like toiletries, for snitching on officers, or for requesting too many accommodations.

iv.     Inaccurate documentation of the use of force, falsified use of force documentation, and failure to investigate allegations of use of force outside the testimony of interested parties;

v.     Promulgating a culture where detainees are too scared to provide accurate testimony due to threats by officers of physical harm; and

vi.    Charging detainees with offense/use of force charges by reporting false, misleading, and inaccurate statements and resorting to use of force unnecessarily to extend the stay of the detainee in the jail as a punishment to the detainee.

c.    **Systemic Understaffing and Overcrowding:** Routine understaffing and overcrowding of the jail that encourages violence between detainees and between detainees and guards, impedes detainees' access to medical care, reduces the staff's abilities to supervise detainees in a safe manner, reduces the staff's abilities to conduct face-to-face observations, and increases the likelihood of harm suffered by the detainees.

94.    At this time, the Plaintiff is aware of the following pervasive pattern preceding the Plaintiff's incident:

95.    These policies are not exclusive, but they are the main policies apparent to the public and that, taken as a whole, are the causes of the injuries to Plaintiff. Although, not all of the policies mentioned above are directly the cause of the injuries to Plaintiff, they are part of the wider system that contributes and promotes violence towards inmates, including Mr. Kennith Howell.

# V.

## CAUSES OF ACTION

**A.     COUNT   I.   *MONELL*   CLAIM;   VIOLATION   OF   THE FOURTEENTH AMENDMENT; PURSUANT TO 42 U.S.C. §1983 CONDITIONS OF CONFINEMENT:**

96.     Plaintiff incorporates the foregoing paragraphs as if set forth fully herein.

97.     Mr. Kennith Howell brings claims against Defendant Harris County for the violations of his 14th Amendment rights under 42 U.S.C. § 1983.

98.     Mr. Kennith Howell invokes the conditions of confinement theory for the injuries he suffered which requires a showing of (1) an official policy; (2) a policymaker; and (3) that the policy was the moving force behind the constitutional violation.

99.     Harris County's acts and omissions, which resulted in Plaintiff's injuries, were committed pursuant to one or more interrelated policies, practices, and customs of Harris County that were promulgated by its policymaker, the Harris County Sheriff, and which resulted in conditions, practices, rules, and restrictions imposed on the detainees that "amounts to punishment in advance of trial." *Sanchez v. Young Cnty.,* 866 F.3d 274, 279 (5th Cir. 2017).

100.    The Court is not required to consider each policy in a vacuum but may consider the interrelation of multiple policies and practices in the county and how each policy may exacerbate the harmful effects of each policy.

### *Harris County's Policies, Practices, and Customs Were the Moving Force Behind the Violation of Plaintiff's Constitutional Rights*

101.    Kennith Howell's injuries were caused by numerous policies, practices, and customs of Harris County. Those policies have been identified above and constitute a condition of confinement that amounts to the level of a punishment. These policies were the moving force behind the injuries to Plaintiff Kennith Howell.

102.    Harris County's policies were persistent, widespread practices of County officials and employees which were so common and well settled that they constitute a custom within the County that arises to the level of a county policy.

103.    This persistent, widespread practice has extended unimpeded as far back as the 2009 DOJ Report, through Sheriff Gonzalez's admissions of the culture of the Jail in 2016 and 2023, through continuous TCJS notices of non-compliance beginning in 2017 and continuing till most recently in April 2023, the numerous other detainees' injuries and deaths from the same acts and policies during this time, and through Kennith Howell's case herein.

104.    Harris County's Policies, practices, and customs, singularly and taken together, of the institutionalization of using excessive force by Jail employee's, and the continuous overcrowding and understaffing of the Jail which heightened the use of excessive force by Jail employees was the moving force behind Kennith Howell's injuries.

105.   Absent these policies, practices, and customs, Harris County would not have utilized unnecessary use of force and would have had sufficient staff and a limited number of detainees that would have prevented Kennith Howell's injuries.

106.   It was highly predictable that Harris County employees, including Detention Officer Henry Martinez would follow these ongoing policies and practices. The known and obvious consequences of Harris County's policies and practices identified above is that Kennith Howell would suffer significant injuries.  The DOJ, TCJS, and even the Sheriff as explained above have all provided notice of these policies and the likely consequences of those policies causing constitutional violations.

107.   Harris County acted with deliberate, callous, conscious, and unreasonable indifference to Kennith Howell's constitutional rights by being aware of the known and obvious consequences of their policies and practices but continuing to authorize, tolerate, and ratify the implementation of the custom and practice resulting in Kennith Howell's injuries.

### *Harris County's Policies, Practices, and Customs Are Not Reasonably Related to Any Legitimate Penological Goal and Amount to Punishment*

108.   Harris County's numerous policies, practices, and customs that were the moving force causing the violations of Plaintiffs' constitutional rights are not related to any penological purpose.

109.   Harris County's policy, practices, and culture of encouraging and failing to deter the excessive use of force by jail employees against detainees serves no legitimate penological purpose.

110.    The DOJ found this area had "significant and often glaring operational deficiencies" including lacking: "(1) a minimally adequate system for deterring excessive use of force, and (2) an adequate plan for managing a large and sometimes violent detainee population." *Id*. The DOJ started their analysis with: "We have serious concerns about the use of force at the Jail." *Id*. at 15. Sheriff Gonzalez and Sheriff Hickman, while serving as the Harris County Jail policymaker both admitted that Jail employees have a history of excessive use of force showing no change between the DOJ Report and now.

111.    The TCJS in December 2021 also noted the heightened violence in the Jail when they found the Jail in non-compliance with minimum jail standards.

112.    On April 6, 2021, TCJS issued its report and notice of noncompliance to the Harris County Jail for its investigation into the in-custody death of Jaquaree Simmons.  The investigation into Mr. Simmons' death led to multiple findings of the excessive use of force, yet, despite those findings, the number of use of force with serious injuries and the numerous cases where detainees are beat by guards has only grown. This ongoing issue shows no legitimate penological purpose as violative of Plaintiff's rights.

113.    Harris County's systemic understaffing and overcrowding of the Harris County Jail does not serve any legitimate penological purpose. The DOJ, TCJS, the Harris County Sheriff, and numerous similar cases all indicate the pervasive practices and policies that make this condition of confinement amount to an unconstitutional level of punishment.

114.   Under well-established Texas law, the Harris County Sheriff is the final policymaker for the Harris County Jail for the purpose of holding the County liable under U.S.C §1983.

115.   The Sheriff position regardless of the individual holding that position is the policymaker.

116.   In November 2016, Sheriff Ed Gonzalez was elected as the Sheriff of Harris County with specific responsibilities over the Harris County Jail.

117.   Sheriff Gonzalez was the policymaker when Mr. Kennith Howell suffered his injuries and died in the Harris County Jail.

118.   Plaintiff Incorporates Plaintiff's Exhibit A, attached hereto, as if set out in full herein. *Wagner, Et Al v. Harris Cnty.,* 4:23-cv-028686 (S.D. Tex. 2023) Plaintiff references and incorporates Plaintiff's Exhibit A.  The Complaint was filed against Harris County, Texas for complainants, and their survivors listed below,  for similar acts perpetrated against them by Detention Officers / Jailers as those suffered by Kennith Howell, as well as others that lost their life.

119.   Sheriff Gonzalez was also the policymaker when Vincent Young, Debora Ann Lyons, Tracy Whited, Wallace Harris, David Perez, Israel Lizano Iglesias, Jim Franklin Lagrone, James Earl Gamble, Victoria Margaret Simon, Alan Christopher Kerber, Damien Lavon Johnson, Michael Griego, Jaquaree Simmons, Rory Ward, Jr., Adeal Gonzalez Garcia, Fred Harris, Gregory Barrett, Kristan Smith, Matthew Shelton, Natividad Flores, Kareem Jefferson, Henry Williams, Loron Ernest Fisher,

Robert Wayne Fore, Benjamin Pierce, Gilbert Allen Nelson, Kevin Alexander Sanchez-Trejo, Fabien Cortez, Simon Peter Douglas, Robert Terry, Jr., Elijah Gamble, Treyvan Crowder, Officer Valdiviez, and Sergeant Jane Doe suffered their injuries and died in the Harris County Jail. In addition to these detainees, Sheriff Gonzalez was the policymaker for Harris County Jail when Officer J. Valdiviez and Sergeant Jane Doe suffered injuries in the jail and the two anonymous employees and Shannon Herklotz resigned their positions.

120.   Sheriff Gonzalez compiled the Serious Incident Reports supplied to TCJS since 2018 which show the massive discrepancy in assaults and use of force in Harris County compared to every other county jail in Texas. These reports also show the growing increase in violence in Harris County Jail under Sheriff Gonzalez's watch.

121.   Sheriff Gonzalez was the policymaker during numerous TCJS reports and notices of non-compliance in relation to the Jail's policies and customs that violated numerous minimum jail standards which are at issue in this case. The TCJS reports and notices during Sheriff Gonzalez's tenure are from February 21, 2017; April 3, 2017; December 19, 2017; August 23, 2018; December 9, 2020; April 6, 2021; December 7, 2021; September 7, 2022; December 19, 2022; March 8, 2023; and April 17, 2023.

122.   The Harris County policymakers had actual or at the very least constructive knowledge of the policies, practices, and customs outlined in this lawsuit because Sheriff Gonzalez would have known about these policies and practices had he properly exercised his responsibilities.

123. Sheriff Gonzalez's own comments on the overpopulation, understaffing, and the excessive use of force within the Jail show that he had actual knowledge of these policies as early as 2016. Additionally, the DOJ Report, TCJS reports, previous lawsuits, and the numerous other cases identified above, show that Sheriff Gonzalez was aware or should have been aware of the pervasive practices within the Jail.

124. Each of the policies, practices, and customs have been the subject of prolonged public discussion and a high degree of publicity. This is exemplified in the 2016 debate between Sheriff Gonzalez and Sheriff Hickman where over half of the debate centered on the overpopulation, lack of medical care, and the culture of violence and excessive force in the Harris County Jail. Nothing has changed since that debate and the conditions have only grown worse.

125. Sheriff Gonzalez was aware that continuing and not correcting or remedying these policies and practices would lead to detainees becoming injured and dying. Sheriff Gonzalez has been deliberately indifferent to these known unreasonable risks by failing to implement any corrective or remedial customs, practices, or policies following the TCJS reports or the deaths or injuries of detainees. The Jail has only grown worse with more deaths, more injuries, less medical care, less supervision and observations, less staff, and more detainees.

126. Based on Harris County's continued policies, practices, and customs that were the moving force behind Plaintiffs' injuries and deaths, Plaintiffs have suffered the damages enumerated in the damage section below.

**B. COUNT II. *MONELL* CLAIM; PURSUANT TO 42 U.S.C. § 1983 4th and 14th AMENDMENT VIOLATIONS – HARRIS COUNTY FAILURE TO TRAIN AND/OR SUPERVISE**

127.  Plaintiff incorporates and adopts by reference all the facts and allegations above as though full set forth herein.

128.  Plaintiff also brings this claim for Harris County's deliberate failure to train and/or supervise their Jail employees which resulted in the violation of Plaintiff's constitutional rights.

129.  For a failure to train claim, Plaintiffs must show (1) the training policy and procedures were inadequate; (2) the County was deliberately indifferent in adopting its training policy and procedures; and (3) the inadequate training policy and procedures directly caused the constitutional violation.

130.  As shown above, Harris County and its policymaker, Sheriff Gonzalez, have been aware of the Jail's rampant culture of violence, excessive use of force, lack of medical care, and lack of observation for years; yet, despite being made aware of their deficiencies, Sheriff Gonzalez has continued with the same training policies and practices and has not implemented new policies or practices that would correct the failure of the Jail employees. These issues have not been addressed by any Harris County Sheriff.

131.  Sheriff Gonzalez recognized in 2016 that the Jail had a culture of employees resorting to excessive use of force too quickly and that this was a training problem. Yet, since 2016, as exemplified in this specific detainee incident the use of force has increased.

132.   As exemplified in Plaintiff's claims, Harris County has a history of encouraging officers to use excessive force, not supervising them in the use of force, not training them on proper de-escalation techniques, and encouraging them to use techniques that result in unnecessary harm encouraging and ratifying false reports, encouraging and ratifying summary investigations, and ultimately charging detainees with the false charges to cover up the use of force.

133.   Ultimately, the Harris County Sheriff's Office failed to properly and adequately train and/or supervise its employees, including Detention Officer Henry Martinez in the treatment of detainees, the proper use of force, particularly in the case of detainees.

134.   Sheriff Gonzalez was well aware of the consequences of failing to train the jail employees in the areas of use of force. Sheriff Gonzalez knew or should have known that this failure to train employees who are tasked with the care and control of the detainees would result in the injuries of detainees.

135.   The need for a different training policy and practice to address the discrepancies raised by the DOJ, the TCJS, and the numerous prior incidents has been obvious for years with knowledge that continued failure to address this policy will result in additional constitutional violations.

136.    Harris County's failure to implement new and additional training policies was the direct cause of Mr. Kennith Howell's injuries.

137.   Harris County's inadequate training and supervision policies, practices, and procedures pertaining to the institutionalization of excessive use of force by Jail

employees, specifically Detention Officer Martinez, was the direct cause of Mr. Kennith Howell's injuries.

138. It was highly predictable that Harris County employees under the current inadequate training and supervision model would use excessive force which resulted in Mr. Kennith Howell's injuries. The known and obvious consequences of Harris County's inadequate training is that detainees would suffer significant injuries. The DOJ, TCJS, and even the Sheriff as explained above have all recognized these policies and the likely consequences of those policies causing constitutional violations.

139. Harris County acted with deliberate, callous, conscious, and unreasonable indifference to Mr. Johnson's constitutional rights by being aware of the known and obvious consequences of their training and supervision policies and practices and failing to implement new or additional training policies or procedures to correct these known deficiencies.

    **C.    COUNT III. *MONELL* CLAIM; PURSUANT TO 42 U.S.C. § 1983 4th and 14th AMENDMENT VIOLATIONS – HARRIS COUNTY UNLAWFUL POLICY BY ACTS OF OFFICIAL POLICY MAKERS**

140. Plaintiff incorporates and adopts by reference all the facts and allegations above as though full set forth herein.

141. Harris County has an informal custom, practice, and/or policy regarding the use of excessive force. The custom, practice or policy includes, but is not limited to:

    (a) Allowing, encouraging, requiring and/or training officers to use excessive force, in situations where the officers would prefer not to physically restrain

suspects, or as in this case, where restraint was not called for, and instead using less obtrusive and/or harmful tactics;

(b) Allowing, encouraging, requiring and/or training officers to use excessive force in lieu of physical restraint and proper detention techniques, or less harmful methods;

(c) Allowing, encouraging, requiring and/or training officers to use excessive force as a first resort rather than training officers to assess the totality of circumstances in an objectively reasonable manner, and

(d) Allowing, encouraging, requiring and/or training officers to confront a non-combative detained prisoner in the same manner as a combative prisoner posing an immediate and objectively reasonable threat to officer safety.

142.   As part of the culture, custom, and practice of the Harris County Sheriff's Office, officers are trained and expected to use excessive or deadly force before a person has a chance to act, and consequently Harris County Sheriff's Office relies on excessive force as a primary law enforcement tool when faced with a person who may be acting in any unusual manner.

143.   These informal customs and/or policies proximately caused the damages complained of in this lawsuit.

144.   Detention Officers and Detention Officer Henry Martinez's use of objectively unreasonable and excessive force as set out above is in accordance with Harris County Policies, procedures, practices, and/or customs relating to use of force. At all material

times, the individual agents and officers were following the policies, procedures, customs and practices of Defendant County and were acting under color of law.

145.   Harris County's customs, policies, procedures, and/or practices relating to use of force amount to a conscious disregard of and deliberate indifference to citizens' rights not to be subjected to unlawful detention and/or use of excessive force.

146.   Further, the customs, policies, procedures, and/or practices are a direct and proximate cause of the damages complained of in this lawsuit.

## D.     COUNTY IV. *MONELL* CLAIM: EPISODIC ACT

147.   Plaintiff incorporates the foregoing and succeeding paragraphs as if set forth fully herein.

148.   In an abundance of caution, Plaintiff also brings this episodic act cause of action in the alternative. See Fed. R. Civ. P. 8(d). To establish county liability under an episodic acts theory, a plaintiff need only show that: (1) a county employee violated the decedent's constitutional rights with subjective deliberate indifference, and (2) the violation resulted from a county policy or custom adopted or maintained with objective deliberate indifference. *Salcido v. Harris Cty.*, U.S. Dist. LEXIS 169034 *127 (S.D. Tex. 2018). Here, first, upon information and belief, at least one of Defendant's employees, Detention Officer Martinez violated Mr. Kennith Howell's constitutional rights with subjective deliberate indifference. That constitutional right was Mr. Kennith Howell's right to not have his basic human needs met with excessive and unnecessary use of force. *Supra.* Second, the violation resulted from the

Defendant's above-described policies or customs which were maintained with objective deliberate indifference.

149.    Upon the second, a plaintiff needs only show (a) an official policy or custom (b) of the county's policymaker (c) that caused (d) the deprivation of a constitutionally protected right. *Salcido v. Harris Cty.*, 2018 U.S. Dist. LEXIS 169034 *130 (S.D. Tex. 2018). First, the relevant policies are described above. *Supra.* In brief, they include the Defendant's custom, policy or practice of failing to properly observe/monitor the inmates, failing to provide adequate/sufficient/timely medical care, systematic understaffing/overcrowding, and most importantly for this specific case, the use of excessive and unnecessary force. *Supra.* Second, the Defendant's policymaker is the Sheriff and the Commissioner's Court. *Supra.* Third, their policies, fourth, caused the deprivation of the Decedent's constitutional protected right. *Supra.* Again, that constitutional right was Mr. Kennith Howell's right to not have excessive and unnecessary force used against him. *Supra.*

## VI.

## STATUTE OF LIMITATIONS VIOLATES TEXAS AND UNITED STATES CONSTITUTION

150.    This lawsuit stems from injuries sustained by Plaintiff on January 14, 2022. This suit was filed in the 164th Judicial District Court, Harris County, Texas on January 22, 2024, a mere eight days after the limitations period. Exactly two years from the date plaintiff was finally released from Ben Taub hospital where he underwent surgery from the brutal beating by Detention Officer Henry Martinez.

151.   Plaintiff affirmatively pleads that the "Statute of Limitations" provisions of Tex. Civ. Prac. & Rem. Code. §74.251 et seq., and Tex. Civ. State. Art 4590i, §10.01 violate the Texas and United States Constitutions and are unconstitutional under their open courts provisions by unreasonably deny him access to the court system when balanced against the statutes' purpose. Plaintiff would show that the nature of his injury and/or wrong, and/or the intentional conduct, misrepresentations made by the Defendants, made it impossible or exceeding difficult for him to adequately discover the date and/or injury during the two-year period immediately following the beating he endured at the hands of Detention Officer Henry Martinez and Defendants and he filed this lawsuit within a reasonable time after discovery of the injury and/or wrong. As a result of the beating Kennith Howell was rushed to an emergency room where he drifted in and out of consciousness for almost a week. In addition, he was unable to mentally comprehend what happened to him until a significant period after being beaten. The beating was so severe he was disabled to the extent he couldn't talk and could only eat a liquid diet for almost two months. For all intents and purposes Kennith Howell suffered a disability, could not act because of said disability and was not afforded the opportunity to seek counsel and file this suit. It is clear that he could not have done more than he did to find out what was wrong with him and exercise his rights.

### i. PLAINTIFF'S CLAIM IS NOT BARREED BY THE STATUTE OF LIMITATIONS

152. Under federal law, courts considering § 1983 claims should look to the general state law statute of limitations applicable to personal injury cases in the forum state. *Piotrowski v. City of Houston*, 237 F. 3d 567, 576 (5th Cir. 2001). Thus, Texas' two-year limitations period will apply in Plaintiff's case. *Id*; see also Tex. Civ. Prac. & Rem. Code Ann. §16.003(a).

153. Although the statute of limitations period is borrowed from State law, the accrual time for a § 1983 claim is governed by federal law, which requires the period to begin running when the Plaintiff has become aware that he has suffered an injury. *Piotrowski* at 576 (emphasis added). The plaintiff has sufficient knowledge to begin accrual when "the circumstances would lead a reasonable person to investigate [a claim] further" *Id*.

154. At the time of the attack on Plaintiff, he was detained at the Harris County Jail. Due to the pervasive culture of violence and excessive force between jailers and detainees, Plaintiff could not have immediately known a physical attack was enough to warrant any sort of action. To be sure, these altercations are not uncommon in the jail and are ratified by the supervisors regularly. A "reasonable" inmate in the shoes of the Plaintiff would see an attack as business as usual rather than a claim worthy event. Rather, Plaintiff could not have known that the attack was worthy of investigation until after he awoke from his bouts of unconsciousness and surgically induced sleep to find that his jaw had been broken and he would be under intense

medical care for months to come. Until Plaintiff understood the extent of the damage to his face and head, the attack would appear to be standard violence as is expected in the Harris County Jail.

155.    It is true, the Plaintiff's inability to know the "full extent of their damages" will not generally toll the statute of limitations. *Paul v. Sabban*, No. 22-51113, 2023 U.S. App. LEXIS 18820, at *3 (5th Cir. July 24, 2023). However, the circumstances here are unlike those in *Sabban*, where a warrantless search and seizure caused new injuries to be revealed at a later date. The Plaintiff in *Sabban* could have known a constitutional violation existed at the time of the search and seizure, as they were present and conscious for the violation. *Id.* Here, Plaintiff could not have been aware of the violation of his rights as the excessive force against detainees in the Harris County jail was regularly accepted and reinforced. Further, the brutal attack on Plaintiff occurred so swiftly that he could not have understood in the moment between the onset of the attack and the damage that was caused that there were claim worthy circumstances. It was not until he was stable and became aware of the extent of damage to his wellbeing that Plaintiff could have reasonably believed he had a claim.

156.    Additionally, the applicable limitations period may be equitably tolled in appropriate circumstances. *See Rotella v. Pederson*, 144 F.3d 892, 897 (5th Cir. 1998). "Because the Texas statute of limitations is borrowed in § 1983 cases, Texas equitable tolling principles also control. *Id.*

157.     The State of Texas recognizes equitable tolling of the limitations period because of a legal disability. *See Hernandez v. Lubbock Police Dep't*, No. 5:18-CV-254-BQ, 2019 U.S. Dist. LEXIS 45193, at *6 (N.D. Tex. Feb. 25, 2019). A legal disability exists when the Plaintiff is not of sound mind. Id. While the Texas Civil Practice and Remedies Code does not define "unsound mind," the term has generally "been interpreted to mean that such a person is unable to manage his affairs or to understand his legal rights or liabilities." *Hernandez* at *6 (Citing *Helton v. Clements,* 832 F.2d 332, 336 (5th Cir.1987)). The Fifth Circuit has held that a plaintiff who experiences injury or harm, as a result of, and after a violation does not meet the standard for "unsound mind." *See Helton* at *336 (Holding plaintiff's mental disability did not arise until several months after the alleged violation of his rights).

158.     Defendant Deputy Martinez's excessive use of force on Plaintiff in his cell at the Harris County Jail caused the onset of Plaintiff's "legal disability." Immediately upon being punched in the face, neck, and body, Mr. Howell suffered severe injuries which required immediate medical attention. He was escorted to the emergency room where he soon underwent surgery to reconstruct his jaw and began his slow recovery. Plaintiff was in and out of consciousness and under close medical care in the hospital for a significant amount of time. During the time immediately following the attack, Plaintiff was administered a myriad of medications which likely effected his understanding and awareness of the circumstances. He was on an all liquid diet with his jaw wired shut. Certainly, he could not have "managed his affairs" as he was fighting to recover from the severe injuries caused by Defendant Martinez.

159. Here, Plaintiff's circumstances are vastly different from those of *Helton*, as he unfortunately did not have several months to come to understand his legal rights and manage his affairs. Instead, in the moment the violation of his rights occurred (as Deputy Martinez began his acts of violence), he became unable to do anything until he received the vital medical attention he required.

160. Further, Plaintiff could certainly not manage his affairs due his inability to speak and advocate for himself while still detained by the very institution who refused him basic hygiene products such as toilet paper. To be sure, he could not rely on those watching him to help him to understand the legal significance of the situation he had found himself in, much less help him to access legal counsel. This is especially true as Plaintiff was still detained by the very institution by which this harm came to him.

161. Thus, because Plaintiff could not have managed his affairs or understood his legal rights while in and out of consciousness in the hospital, his legal disability should toll the statute of limitations so that accrual began upon his release and return to the Jail.

## VII.

## DAMAGES

162. As a result of the incident, Plaintiff was injured and brings this suit for the following damages:

      i.    Reasonable and necessary medical care and expenses incurred by Kennith Paul Howell in the past;

ii. Reasonable and necessary medical care and expenses which, in all reasonable probability will be incurred by Kennith Paul Howell in the future;

iii. Physical pain and suffering by Kennith Paul Howell in the past;

iv. Physical pain and suffering which, in all reasonable probability will be suffered by Kennith Paul Howell in the future;

v. Physical impairment of Kennith Paul Howell in the past;

vi. Physical impairment which, in all reasonable probability, will be suffered by Kennith Paul Howell in the future;

vii. Mental anguish of Kennith Paul Howell in the past;

viii. Mental anguish which, in all reasonable probability, will be suffered by Kennith Paul Howell in the future;

ix. Loss of earnings sustained by Kennith Paul Howell in the past;

x. Loss of earnings and capacity which, in all reasonable probability will be incurred by Kennith Paul Howell in the future;

xi. Violations of constitutional rights;

xii. Pre-judgment interest;

xiii. Post-judgment interest; and

xiv. Reasonable and necessary attorneys' fees incurred.

# VIII.

## JURY DEMAND

163. Plaintiff hereby demands a jury trial on this matter and tenders the appropriate jury fee.

# IX.

## PRAYER

164. Wherefore, premises considered, Plaintiff Kennith Paul Howell prays that Defendants be cited to appear and file an answer herein, and that upon trial Plaintiff Kennith Paul Howell have and recover a judgment against Defendants for his actual damages, exemplary damages, pre-judgment interest, post-judgment interest, Court costs, and such other and further relief, at law and in equity, to which Plaintiff may be justly entitled.

Respectfully submitted,

THE WILLOUGHBY LAW FIRM, LLC

By: _/s/ Joshua R. Willoughby_
      Joshua R. Willoughby
      Texas Bar Number: 24058762
      Federal Bar Number: 911568
      4200 Montrose Blvd, Suite 540
      Houston, Texas 77006
      Telephone: (713) 222 – 1356
      Telecopier: (713) 277 – 7166
      ATTORNEY FOR PLAINTIFF