Case 4:24-cv-00468 Document 24 Filed on 08/01/24 in TXSD Page 1 of 15

United States District Court
Southern District of Texas
**ENTERED**
August 02, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **KENNITH PAUL HOWELL,** | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:24-CV-468 |
| | § | |
| **HARRIS COUNTY, TEXAS,** *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM & ORDER

Before the Court are two motions: Defendant Harris County's Motion to Dismiss (ECF No. 12) and Defendant Henry Martinez's Rule 12(c) Judgment on the Pleadings (ECF No. 13). The Court held a telephonic hearing on the Motions on July 22, 2024. In the hearing, the Court (1) denied Harris County's Motion; (2) granted Plaintiff leave to amend his complaint to properly assert claims against Martinez; and (3) granted Martinez's unopposed request to stay discovery pending resolution of qualified immunity issues. Minute Entry dated 07/22/2024. The Court now issues this Order to clarify and expand upon its rulings.

### I. BACKGROUND

At this stage, the Court accepts the well-pleaded facts alleged in Howell's complaint as true, and views them in the light most favorable to Howell. *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004).

On or about January 14, 2022, Howell was detained in the Harris County Jail. ECF No. 11 at ¶ 19. He continuously asked Detention Officers for toilet paper at 8:00 a.m. until 12:00 p.m., but did not receive it. *Id.* At or around 12:00 p.m., Detention Officer Henry Martinez, an employee of the Harris County Sherriff's Office, had another officer open Howell's cell. *Id.* The

1

Complaint alleges that Howell complained about the amount of time it took to get him toilet paper, and that Martinez then told Howell "this is my house" and punched him in the face, neck, and various other parts of his body. *Id.* The Complaint notes that Martinez alleged that he punched Howell because Howell "lunged towards him," and that Howell was subsequently charged with violating the Inmate Handbook Code prohibiting certain contact with staff members. *Id.* at ¶¶ 78, 83; *see also* ECF No. 11-2 (incident report).

These punches seriously injured Howell. ECF No. 11 at ¶ 19–20. He was brought to Ben Taub Hospital, where he was treated for a broken jaw and two shattered teeth. *Id.* at ¶ 20. He had to have a plate put in his jaw, which required his jaw to be wired shut for a period of time. *Id.* at ¶ 20, 82. Due to his jaw issues, he was put on an all-liquid diet for close to a month, and was "in and out of consciousness and in pain" during his hospital stay. *Id.* He was released from the hospital and returned to Harris County Jail on January 22, 2022. *Id.* at ¶ 150.

In connection with these events, Howell filed the instant § 1983 suit against Harris County and Martinez in state court on January 22, 2024. Defendants removed the action to this Court this past February. Howell's complaint brings a 42 U.S.C. § 1983 claim against Defendant Harris County. The Complaint purports to bring four counts against Harris County pursuant to § 1983: (1) violation of the Fourteenth Amendment, under a conditions-of-confinement theory, *id.* at ¶¶ 96–126, (2) failure to train and/or supervise, *id.* at ¶¶ 127–139, (3) unlawful policy by acts of official policymakers, *id.* at ¶¶ 140–146, and (4) episodic acts (as an alternative to its conditions-of-confinement theory), *id.* at ¶¶ 147–49. The Complaint also names Henry Martinez as a Defendant, but does not levy any claims against Martinez specifically. Defendant Harris County moved to dismiss all of Howell's claims against it. ECF No. 12. Defendant Martinez moved to dismiss Howell's claims against him and asked the Court to stay discovery pending

2

resolution of his entitlement to qualified immunity. ECF No. 13.

## II.     LEGAL STANDARD

A motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure is subject to the same standards applicable to motions to dismiss brought pursuant Rule 12(b)(6). *Phillips v. City of Dallas*, 781 F.3d 772, 775 (5th Cir. 2015). Thus, the 12(b)(6) legal standard is applicable to both Defendants' motions.

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

In the Fifth Circuit, motions to dismiss under Rule 12(b)(6) are viewed with disfavor and are rarely granted. *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009); *Lowrey v. Texas A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997). That said, a complainant must plead "enough facts to state a claim of relief that is plausible on its face." *Twombly*, 550 U.S. at 570. This must be more than "[a]n unadorned, the-defendant-unlawfully-harmed-me accusation" or "a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather, a claim is plausible on its face only "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. While the court must accept well-pleaded facts as true, legal conclusions are not entitled to the same assumption of truth. *Id*. When deciding a Rule 12(b)(6) motion, the Court may consider

"the complaint, its proper attachments, documents incorporated by reference, and matters of which a court may take judicial notice." *Wolcott v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (quoting *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008)).

### III. ANALYSIS

#### A. Whether Plaintiff's claims are time-barred

Both Defendants' Motions argue that Plaintiff's claims are time-barred. All parties agree that a two-year limitations period applies. *See Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001). They also agree that the incident occurred on January 14, 2022 and that Plaintiff filed suit 2 years and 8 days later, on January 22, 2024. ECF No. 11 at ¶ 19.

In the hearing, the Court found that Howell's claims were timely due to his intermittent consciousness and inability to carry out regular activities during his period of hospitalization. For § 1983 claims, state law sets the limitations period and any applicable tolling rules, while federal law sets the accrual date. *Jackson v. Johnson*, 950 F.2d 263, 265 (5th Cir. 1992). A § 1983 excessive force claim like Howell's accrues on the day that the excessive force occurred. *See Morrill v. City of Denton, Texas*, 693 F. App'x 304, 306 (5th Cir. 2017); *Armstrong v. Serpas*, 670 F. App'x 851, 852 (5th Cir. 2016). However, in Texas, if a person has an "unsound mind" when a cause of action accrues, "the time of disability is not included in a limitations period." TEX. CIV. PRAC. & REM. CODE § 16.001. Thus, a plaintiff's "unsound mind" can serve toll the limitations period. The Texas statute does not define "unsound mind," but Texas courts have interpreted it to mean an inability "to manage [one's] affairs or to understand [one's] legal rights or liabilities." *Helton v. Clements*, 832 F.2d 332, 336 (5th Cir. 1987).

Courts have found that the "unsound mind" statutory provision does not apply where a

4

plaintiff "continued to carry out regular activities," that is, following a typical routine such as attending work or classes. *Id.* The Fifth Circuit has hinted that a period of hospitalization can be adequate to toll limitations periods under an unsound mind theory. *Id.* ("Even if [Plaintiff]'s hospitalization constituted sufficient evidence to raise a genuine issue as to whether the statute should be tolled for the period he was in the hospital, his hospital stay was only a month long and thus in any case was insufficient to bring his suit within the statutory limit."). Here, Howell's allegations demonstrate that he did not have the mental capacity to pursue litigation while he was hospitalized. Unlike in *Helton* and related cases, Howell was unable to carry on with regular activities during his period of hospitalization, medication, and inconsistent consciousness. Thus, the limitations period in this case period was suspended for the eight days Howell was hospitalized, such that it did not expire until January 22, 2024—the day Howell filed his complaint. Accordingly, Howell's action is not time-barred.

### B.  § 1983 Claim Against Harris County

Howell bases his § 1983 claim against Harris County on two theories of liability: (1) that the Harris County Jail has a policy of using excessive force against detainees; and (2) that the policymaker failed to adequately train its officers to avoid the infliction of excessive force.[1] Harris County contends that both theories of liability fail, and that, in any event, Howell has not adequately pled a constitutional violation under the Fourteenth Amendment. In the hearing, the

---

[1] While they are pled as separate counts, establishing Harris County's policy of excessive force and establishing Harris County's failure to train employees in proper usage of force represent two pathways to establishing § 1983 municipal liability. *See Valle v. City of Houston*, 613 F.3d 536, 544 (5th Cir. 2010) ("The standard applicable to a failure-to-train claim is the same as the standard for municipal liability."); *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390, 109 S. Ct. 1197, 1205, 103 L. Ed. 2d 412 (1989) ("[T]he failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury."). Thus, the Court considers whether Howell allegations plausibly establish these theories of liability before considering whether Howell has adequately alleged a substantive constitutional violation.

5

Court denied Harris County's Motion, implicitly rejecting each argument. It now clarifies the reasoning underlying its ruling.

### 1. Policy

Harris County is a local government and cannot be held liable for Martinez's actions under a theory of *respondeat superior*. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). Instead, to establish municipal liability under § 1983, Howell must show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of his constitutional rights. *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 847 (5th Cir. 2009).

§ 1983 plaintiffs can establish the first element by pointing to a "persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Inaimi v. Harris Cnty., Texas*, No. 4:21-CV-01832, 2022 WL 901556, at *2 (S.D. Tex. Mar. 25, 2022) (Ellison, J.) (quoting *Hicks-Fields v. Harris County*, 860 F.3d 803, 810-11 (5th Cir. 2017)). The Fifth Circuit has emphasized that a custom can be inferred only from a pattern displaying "similarity and specificity" and involving "sufficiently numerous prior incidents, as opposed to isolated instances." *Id.* (quoting *Peterson v. City of Fort Worth*, 588 F.3d 838, 851 (5th Cir. 2009)).

To demonstrate the existence of the Harris County Jail's custom of institutionalized violence, Plaintiff points to a 2009 DOJ Memorandum, statements by the Sheriff, and a 2021 TCJS report, and a complaint filed against Harris County in 2023, all of which evince longstanding and widespread, yet unaddressed, violence in the Harris County Jail. First, Plaintiff's Complaint references a 2009 Memorandum written by the U.S. Department of Justice

6

Civil Rights Division entitled "Investigation of the Harris County Jail" ("2009 DOJ Memo").[2] ECF No. 11 at ¶ 4. The 2009 DOJ Memo found that the Harris County Jail lacked "a minimally adequate system for deterring excessive use of force." 2009 DOJ Memo at 14. Specifically, it notes that

> The Jail's use of force policy is flawed in several regards. First, neither written policy nor training provide staff with clear guidance on prohibited use of force practices. . . . Second, use of force policies fail to distinguish between planned use of force . . . and unplanned use of force . . . . Third, Jail policies do not provide for routine videotaping of use of force. Fourth, the Jail does not have an appropriate administrative process for reviewing use of force. Jail policy does not clearly require the individual using force to file a use of force report. . . . In other words, use of force occurs at the Jail without adequate review, and Jail data regarding use of force levels cannot be considered reliable. We believe that the incidents noted during our review may only reflect part of what is really occurring within the facility.

*Id.* at 15. Based on these inadequate policies, the DOJ found that "the Jail exposes detainees to harm or risk of harm from excessive use of force." *Id.* Second, in 2016, Sheriff Gonzalez made public statements acknowledging the need to curb the culture of violence and excessive force against detainees in the Harris County Jail. ECF No. 11 at ¶ 5. Third, Plaintiff's Complaint incorporates the Texas Commission on Jail Standards' 2021 Annual Reports issued in April and December of that year ("TCJS Reports"). ECF No. 11 at 21 n.5. Those reports found that the Harris County Jail was not in compliance with minimum jail standards, as it (1) did not adequately observe or investigate the circumstances under which a detainee was beat to death by guards and (2) had staffing shortages that were directly correlated with increased violence. ECF No. 11-1 at 82–83 (discussing TCJS Reports).

Lastly, Howell includes a complaint from a complaint from *Wagner et al v. Harris Cnty.*,

---

[2] Defendant cites to *Inaimi v. Harris Cnty.*, No. 4:21- CV-01832, 2022 WL 901556, at *3 (S.D. Tex. Mar. 25, 2022) to argue that Plaintiff cannot rely upon the DOJ report to establish the existence of a policy. For the reasons this Court articulated in *Wagner v. Harris Cnty.*, the Court rejects this argument. No. 4:23-CV-02886, 2024 WL 2836332 *11 n.5 (S.D. Tex. June 4, 2024).

*Texas*, Case No. 4:23-cv-2886 ("*Wagner* complaint"), which was filed in this Court in 2023. ECF No. 11-1. The *Wagner* complaint details a series of incidents in the Harris County Jail that occurred in 2022 and 2023, and resulted in death or serious injury of 27 detainees. Six of the *Wagner* plaintiffs describe injuries stemming from guards beating them. *Id.* at ¶¶ 50–58, 62–68, 161–69, 230–31, 234–43, 275–78.

      Defendant argues that the incidents described in these four documents are too dissimilar from Howell's experience and too few in number to establish a "pattern" for *Monell* purposes. The Fifth Circuit has explained that a plausible pattern "requires similarity and specificity; [p]rior indications cannot simply be for any and all bad or unwise acts, but rather must point to the specific violation in question." *Hicks-Fields v. Harris Cnty.*, 860 F.3d 803, 810 (5th Cir. 2017) (quoting *Peterson*, 588 F.3d at 850) (cleaned up). The similarity requirement "should not be exaggerated," but the prior acts must "be fairly similar to what ultimately transpired." *Id.* In terms of numerosity, "[w]here the violations are flagrant or severe," a shorter pattern of conduct can demonstrate that "diligent governing body members would necessarily have learned of the objectionable practice and acceded to its continuation." *Bennett v. City of Slidell*, 728 F.2d 762, 768 (5th Cir. 1984). Here, Howell identifies several incidents of officers using excessive force against detainees, including beatings to the head that required hospitalization. Taking the 2009 DOJ Report together with the Sheriff's 2016 statements, the TCJS's 2021 findings, and the allegations of incidents in 2022 and 2023 in the *Wagner* complaint, it is clear that Howell's pleadings plausibly allege that (1) there is a longstanding pattern of guards using excessive force against detainees and (2) Sheriff Gonzalez is well aware of this pattern. *See Wagner*, 2024 WL 2836332, at *12 (allegations sufficient to plead existence of municipal policy encouraging violence against detainees in Harris County Jail); *see also Bartee v. Harris County*, No. 4:16-

CV-2944, 2018 U.S. Dist. LEXIS 232945, at *14 (S.D. Tex. 2018) (same). Therefore, Howell has adequately pled that there is a policy of inflicting violence upon detainees in the Harris County Jail.

The remaining question, then, is whether Howell has plausibly alleged that this policy was promulgated by the municipal policymaker and that it was the moving force behind the violation of his constitutional rights. *Peterson*, 588 F.3d at 847. Harris County does not contest these points, so the Court deems any such argument waived. *JTB Tools & Oilfield Servs., L.L.C. v. United States*, 831 F.3d 597, 601 (5th Cir. 2016) (argument waived for inadequate briefing). In any event, Howell's allegations and applicable authority plausibly indicate that Harris County Sheriff Ed Gonzalez is the policymaker for the jail. ECF No. 11 at ¶ 2; *Turner v. Upton County, Tex.*, 915 F.2d 133, 136 (5th Cir. 1990) ("[I]n Texas, the county Sheriff is the county's final policymaker in the area of law enforcement, not by virtue of the delegation by the county's governing body but, rather, by virtue of the office to which the sheriff has been elected."). And, if Howell is correct that there is a policy of institutionalized excessive force against detainees, the Court can plausibly infer that the policy caused the use of excessive force against Howell. *Bartee v. Harris County*, No. 4:16-CV-2944, 2018 U.S. Dist. LEXIS 232945, at *16 (S.D. Tex. 2018). All in all, the Court finds and holds that Howell's allegations are enough to surmount *Monell*'s pleading standards at this juncture.

### 2. Failure to train

Howell's failure-to-train theory of liability requires him to prove that "(1) the training or . . . [supervising] procedures of the municipality's policymaker were inadequate, (2) the municipality's policymaker was deliberately indifferent in adopting the . . . training [or supervising] policy, and (3) the inadequate . . . training [or supervising] policy directly caused

9

the plaintiffs' injury." *Inaimi*, 2022 WL 901556, at *4 (Ellison, J.) (quoting *Pineda v. City of Houston*, 124 F.Supp.2d 1057, 1078 (S.D. Tex. 2000)).

First, the Court finds that Plaintiff has sufficiently alleged that Harris County did not adequately train Detention Officers in de-escalation or other procedures that would prevent unnecessary and excessive force, and that these inadequate procedures caused Plaintiff's injuries. The 2009 DOJ report incorporated into Plaintiff's complaint specifically points out that there is no written policy or training that provides staff with guidance on prohibited use of force policies, there is not routine videotaping of use of force, and there are not adequate review procedures in place when jail officials use force. 2009 DOJ Memo at 15. The DOJ concluded that these policies—or lack thereof—expose detainees to harm or risk of harm from excessive use of force. *Id.* Howell alleges that Sheriff Gonzalez—the policymaker—has not implemented new policies to address these concerns, despite acknowledging the need to address the Harris County Jail's culture of violence in 2016. ECF No. 11 at ¶¶ 130–31. In fact, less than two months ago, this Court found that similarly situated individuals detained in the Harris County Jail had sufficiently pled that the Jail's use-of-force training procedures were inadequate. *Wagner*, 2024 WL 2836332 at *14.

Second, the Court finds that Howell has adequately pled that Sheriff Gonzalez was deliberately indifferent to these inadequacies in training. To establish deliberate indifference, a plaintiff must plead facts demonstrating that "the need for more or different training is obvious, and the inadequacy so likely to result in violations of constitutional rights, that the policymakers of the city can reasonabl[y] be said to have been deliberately indifferent to the need." *Sanders-Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010); *Est. of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005). "'[A] pattern of similar constitutional

10

violations by untrained employees is ordinarily' required to show deliberate indifference." *Pena*, 879 F.3d at 623 (quoting *Connick v. Thompson*, 563 U.S. 51, 62 (2011)). The Supreme Court has remarked that it would amount to deliberate indifference if city employees, "in exercising their discretion, so often violate constitutional rights that the need for further training must have been plainly obvious to the city policymakers, who, nevertheless, are 'deliberately indifferent' to the need." That is plainly the case here. In fact, Howell alleges that Sheriff Gonzalez himself remarked in 2016 that further training was needed to "end th[e] culture [in the Harris County Jail] that quickly leads to physical altercation," yet did nothing since to implement such training. ECF No. 11 at ¶ 5. Plaintiff has plausibly alleged that Sheriff Gonzalez was deliberately indifferent in this case.

Lastly, the Court finds that Howell has adequately pled that the lack of training on appropriate use of force caused Howell's injuries. Defendant does not raise any argument as to causation. *See JTB Tools & Oilfield Servs.*, 831 F.3d at 601 (argument waived for inadequate briefing). In any event, it is intuitive that Howell's factual allegations involving Martinez's grossly disproportionate response to Howell's request for toilet paper stem from a lack of training of constitutionally permissible use of force. Thus, Howell has sufficiently alleged a failure-to-train theory of liability.

### 3. Underlying constitutional violation

The next issue is whether Howell has sufficiently pled a Fourteenth Amendment violation. Howell's complaint purports to bring a Fourteenth Amendment conditions of confinement claim challenging the general widespread culture of violence in the Harris County Jail. In the alternative, he levies an episodic acts claim, tied to Martinez's acts of violence against him. Harris County argues that both claims fail to adequately allege a constitutional violation.

There are two theories by which a pretrial detainee can establish a Fourteenth Amendment Violation: (1) conditions of confinement or (2) episodic acts. *Garza v. City of Donna*, 922 F.3d 626, 632 (5th Cir. 2019). A conditions of confinement claim challenges the "general conditions, practices, rules, or restrictions of pretrial confinement." *Id.* (quoting *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 643 (5th Cir. 1996)). An episodic act or omission claim, on the other hand, challenges "a particular act or omission of one or more officials," and "an actor usually is interposed between the detainee and the municipality." *Id.* (quoting *Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997) (en banc)). "[T]he question of which theory applies is a context-specific inquiry." *Wagner*, 2024 WL 2836332, at *7 (Ellison, J.). Any harmful act perpetrated by a particular official, in isolation, may be classified as an episodic act or omission. *See id.* But, if that same act is also perpetrated by many other officials, such that it amounts to "an unstated or *de facto* policy," it may be classified as a conditions of confinement claim. *Cadena v. El Paso Cnty.*, 946 F.3d 717, 727 (5th Cir. 2020) (quoting *Shepherd v. Dallas Cty.*, 591 F.3d 445, 452 (5th Cir. 2009)); *Wagner*, 2024 WL 2836332 at *7; *see also Hare*, 74 F.3d at 643–45 (describing how the failure to provide medical care and the failure to protect detainees from violence can fall into either category depending on the context); *see also Shepherd*, 591 F.3d at 453 (allowing claims to proceed under conditions theory because the plaintiff "presented extensive independent evidence on the jail's treatment of inmates with chronic illness. This evidence included a comprehensive evaluative report commissioned by the County, the DOJ report, affidavits from employees of the jail and its medical contractor attesting to the accuracy and applicability of the reports, and a plethora of additional documentary evidence.").

This question of classification is functionally equivalent to the *Monell* "custom" inquiry described above. *See Wagner*, 2024 WL 2836332, at *8. Thus, for the reasons described above,

the Court finds that Howell has plausibly alleged that there is a *de facto* policy of excessive force against detainees in the Harris County Jail. *See also id.* (collecting cases and reaching same conclusion).

Next, if a plaintiff establishes that the complained-of conduct constitutes a condition of confinement, the court must then consider whether the restriction on rights "was reasonably related to a legitimate governmental interest." *Hare*, 74 F.3d at 640.[3] The reasoning underlying this requirement is that if a restriction is not related to a legitimate government interest, its purpose must be punishment. And, significantly, the Fourteenth Amendment does not permit pre-trial detainees to be punished, as they have not been convicted of a crime. *Duval*, 631 F.3d at 206. Here, Harris County's *de facto* policy of excessive force in its jail cannot be said to have a legitimate penological purpose. Indeed, Defendants have not advanced any possible purpose for the Court to consider. *See JTB Tools*, 831 F.3d at 601 (argument waived for inadequate briefing).

Therefore, the Court finds that Plaintiff has sufficiently pled a Fourteenth Amendment conditions-of-confinement claim that can proceed past the motion-to-dismiss stage.[4]

In sum, Howell allegations are sufficient to establish municipal liability under both a policy and a failure-to-trail theory. Further, he has plausibly alleged that Harris County has violated his Fourteenth Amendment rights under a conditions-of-confinement theory. Accordingly, his § 1983 claim against Harris County may proceed.

### C.  § 1983 Claim Against Martinez

In addition to the timeliness argument discussed above, Martinez's Motion raises one other issue: that he is entitled to qualified immunity. Qualified immunity is only applicable

---

[3] Unlike plaintiffs bringing episodic acts claims, Howell need not establish deliberate indifference on the part of the municipality. *Duvall v. Dallas Cnty., Tex.*, 631 F.3d 203, 207 (5th Cir. 2011).
[4] Because Plaintiff's episodic act theory of liability is an alternative theory to his conditions of confinement theory, the Court need not address the parties' episodic act arguments at this juncture.

where government officers are sued in their individual capacity. *Keim v. City of El Paso*, 1998 WL 792699, at *3 (5th Cir. Nov. 2, 1998); *Hunter v. Town of Edwards*, 871 F. Supp. 2d 558, 562 (S.D. Miss. 2012). Howell's complaint does not bring any claims against Martinez in his individual capacity; it only brings *Monell* claims against the County. To the extent that these claims are also against Martinez in his official capacity, they are duplicative of the claims against the County. *Hawkland v. Hall*, 860 F. App'x 326, 328 n.2 (5th Cir. 2021).

Accordingly, at this stage, the Court finds that Howell has failed to state a plausible claim against Martinez. But Plaintiff may, if he wishes, file an Amended Complaint that asserts a § 1983 excessive force claim against Martinez in his individual capacity within **two weeks** of the entry of this Order. Defendant Martinez may file a Motion to Dismiss within **two weeks** of Plaintiff's filing of his Amended Complaint.

### D. Martinez's request to stay discovery

In the July 22, 2024 hearing, the Court granted Martinez's request to stay discovery pending resolution of the qualified immunity issues. It is well-established that assertion of a qualified immunity defense permits an individual-capacity defendant to "avoid the costs and general consequences" of suit, such as discovery. *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 143 (1993). This is because qualified immunity functions as an "*immunity from suit* rather than a mere defense to liability" which is "effectively lost if a case is erroneously" permitted to move forward. *Id.* (citing *Mitchell v. Forsyth*, 472 U.S. 511, 512, 105 S. Ct. 2806, 2808, 86 L. Ed. 2d 411 (1985)). This reasoning does not shield Harris County from the costs associated with discovery, however. Therefore, the parties should keep in mind that the stay of discovery exclusively applies to any claims asserted against Martinez in his individual capacity.

## IV.  CONCLUSION

In sum, the Court **DENIES** Defendant Harris County's Motion. The Court **GRANTS** Plaintiff leave to file an Amended Complaint according to the terms set forth in this Order. Finally, the Court **GRANTS** Martinez's request to stay discovery pending resolution of qualified immunity issues.

**IT IS SO ORDERED**.

**SIGNED** at Houston, Texas, on this the 1st day of August, 2024.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE